# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HELEN BUTLER, Personal Representative for
the Estate of Zanthia Standiford, Deceased,

     Plaintiff,

v.                           Case No. 05-CV-72990

CITY OF PONTIAC, et. al.,

     Defendants.

_____/

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending before the court is Defendants' motion for summary judgment, filed on
April 26, 2006. The matter has been fully briefed,[1] and the court concludes a hearing is
not necessary. *See* E.D. Mich. LR 7.1(e)(2). Because Plaintiff has failed to present
sufficient evidence establishing that the individual Defendants at issue acted with
deliberate indifference to Plaintiff's known medical needs, the court will grant the
motion.

### I. BACKGROUND

On August 3, 2003, Plaintiff's decedent, Zanthia Staniford[2] was arrested for retail
fraud at a Pontiac, Michigan Rite Aide store. (*See* Pl.'s Compl. at ¶ 16; Defs.' Mot. Br.

---

[1] By stipulation of the parties, the court entered an order on June 2, 2006, which
allowed Plaintiff an additional twenty-one days to complete the necessary discovery to
respond to Defendants' motion. (*See* Dkt. # 25.) All such discovery is now completed,
and the parties agree the matter is ready for determination. (*See* Pl.'s Resp. at 1.)

[2] While the lawsuit was filed with the name "Standiford" listed, Defendants have
pointed out that decedent's name is spelled "Staniford." (Defs.' Mot. at ¶ 1, n.1)
Because Plaintiff adopts this spelling in her response, the court will likewise refer to the
decedent as "Staniford" in this opinion.

at 2.)  Around 12:30 p.m., Staniford was placed into a holding cell[3] for temporary
confinement at the Pontiac Police Department until she could be taken to court the next
day.  (*See* Pl.'s Resp. at 3; Defs.' Mot. Br. at 2.)  Staniford's cell-mate discovered her
dead on August 4, 2003, apparently having passed away in her sleep.[4]  (*See* Pl.'s
Resp. at 5; Defs.' Mot. Br. at 2.)  The medical examiner determined that her death was
related to complications of drug abuse, most likely cocaine-induced heart arrhythmia.
(*See* Defs.' Mot. Br. at 2; Pl.'s Resp. at 5; Medical Examiner's Report at 1, Defs.' Ex. E;
Ortiz-Reyes Dep. at 18, Pl.'s Ex. F.) The arresting officer's report indicates that
Staniford did not request any medical care, but that she was offered and refused
medical care when she arrived at the station.  (*See* Defs.' Mot. Br. at 4; Police Report at
1, Defs.' Ex. G.)

    The holding cell to which Staniford was taken prior to her death already held two
female inmates, Wendy Smith and Lisa Brantley.  (*See* Pl.'s Resp. at 3; Defs.' Mot. Br.

---

[3] Sergeant Pashko Ivezaj supervised the holding cell area until 5:00 p.m. that
day, and he testified that the holding cell was monitored by video camera and
approximately twenty feet away from the sergeant's desk. (*See* Pl.'s Resp. at 11; Ivezaj
Dep. at 12, Pl.'s Ex. A.)   A sergeant on duty, therefore, would be able both to see the
prisoners at all times and to hear them if the prisoners yelled out. (*See id.*)
Furthermore, department policy required the supervisor to ensure that prisoners were
checked about every half hour.  (*See* Pl.'s Rep. at 3, Ivezaj Dep. at 13, Pl.'s Ex. A.)
While he remembered that "there were at least two ladies" in the cell, Ivezaj did not
recall seeing Staniford personally and there is no written record of who made the
prisoner checks that night.  (Ivezaj Dep at 32-33.)  Further, Ivezaj testified that he did
not recall anything unusual about Staniford.  (*Id.* at 33.)

    [4] Sergeant Jeffrey Hohendorf supervised the holding cell area that night, and left
the station before Staniford was discovered dead.  (*See* Hohendorf Dep. at 15-16, Pl.'s
Ex. I.)  Hohendorf verified Ivezja's testimony that prisoners were checked about every
half hour, but he did not recall ever speaking with or hearing any of the female inmates
present that night.  (*See id.* at 8, 16.)

at 2-3.)  Ms. Brantley's husband, Benjamin Brantley, was located within partial viewing

and hearing distance in another holding cell.  (*See* Defs.' Mot. Br. at 8; Benjamin

Brantley Dep. at 8, 14-18, 22-24.)  Plaintiff does not accuse any individual officer by

name of a specific, unique wrong in her complaint, but to the extent allegations are

made generally, Plaintiff's case rests largely upon the testimony of these three other

inmates and a few supporting documents.

The first cellmate, Wendy Smith, was being held on drug charges, and had used

both cocaine and heroin earlier that day.  (*See* Smith Dep. at 23, Defs.' Ex. I.)  Smith

testified at her deposition that from the time Staniford arrived in the cell, Staniford was

"very lethargic, she just wanted to sleep, she was cold, shaking, just sick."  (*Id.* at 14.)

Staniford allegedly told Smith that her illness was due to heroin withdrawal, although no

heroin use was indicated by the medical examiner.  (*See* Pl.'s Resp. at 3; Defs.' Mot. Br.

at 2; Medical Examiner's Report, Defs.' Ex. E.)  In her deposition, Smith testified that

both she and Ms. Brantley made as many as three joint attempts to inform police

officers that Staniford required medical attention either due to heroin withdrawal or just

drugs generally, ultimately succeeding in informing several different officers. (*See* Smith

Dep. at 16-17, 44-45.)

At some other point during these events, though she is not at all sure when,

Smith also recalls hearing Staniford herself tell the officers that she was sick and

needed to go to the hospital, but that Staniford may not have specified the reason.  (*See*

*id.* at 45-46, 51.)  Furthermore, Smith said that Staniford did not scream out in distress

or make a commotion, but simply "let it be known" that she needed medical attention.

(*See id.* at 46.)

Sometime before 6:00 p.m. Smith experienced a panic attack with accompanying chest pains and, when she notified the officers, they took her to the hospital with little delay. (See *id.* at 19.) At this point, Smith's story becomes somewhat contradictory. In her written statement to the Oakland County Sheriff on August 4, 2003--the very day Staniford was found dead--Smith stated that when the officers came to take Smith to the hospital, "Zan [sic] also told officer[s] she needed to go because she going [sic] through heroin withdrawal," to which an officer replied "we can not take everyone who says that." (Defs.' Ex. J; *see also* Pl.'s Resp. at 4; Smith Dep. at 15-16.) This written statement appears to be consistent with the testimony of another of Staniford's cellmates, Lisa Brantley, who also recalled that Staniford talked to officers during Smith's removal. (*See* L. Brantley Dep. at 48-49, Defs.' Ex. F.) Later during her deposition, however, Smith claimed not only that Staniford was asleep when Smith was taken to the hospital, but also that it was really Smith herself, and only Smith, who informed the officers of Staniford's continued need for medical care. (*See* Smith Dep. at 20, Defs.' Ex. I.)

Smith could not identify any of the officers that were allegedly informed of Staniford's illness, and her only recollection of them is that one of the officers was a short, bald, light-skinned, black male. (*See id.* at 44.)[5]

---

[5]Smith also described one female officer, but could only recall Staniford discussing her children with that officer, and could not recall her discussing her sickness or heroin withdrawal. (Smith Dep. at 49, Defs.' Ex. I.)

4

The second witness, Ms. Brantley, remained in the holding cell through the night and was the first person to discover Staniford's death. (*See* Pl.'s Resp. at 4-5; Defs.' Mot. Br. at 4.) Ms. Brantley says that once Smith told an officer of her illness, the officer left to inform his supervisor. Shortly thereafter Smith was taken to the hospital. (*See* L. Brantley Dep. at 16, Defs.' Ex. F.) It was at this time, according to Ms. Brantley, that Staniford asked the officers for medical attention. (*Id.* at 16, 20.)

While Ms. Brantley remembered hearing Smith[6] and Staniford talking to the officers as Smith was removed, she also said that the male prisoners nearby were making noise during that time by banging on the doors in their own effort to gain the officers' attention. (*See* L. Brantley Dep. at 48, 51-52, Defs.' Ex. F.) In the midst of all this "commotion," Ms. Brantley said she was not certain that the officers heard Staniford, but that one officer, a black male, at least appeared to acknowledge Staniford with his eyes. (*Id.* at 16, 20, 49.) After this incident, Ms. Brantley says that Staniford yelled "officer, officer." (*Id.* at 52.) Shortly thereafter, and without having seen an officer respond to or acknowledge Stantiford's cries, Ms. Brantley fell asleep. (*Id.*) Save for a brief waking moment at approximately 1:15 a.m., at which time she could still see Staniford breathing, Ms. Brantley slept until morning. (*Id.* at 56.)

Plaintiff's third and final principal witness is Benjamin Brantley, Lisa Brantley's husband. Mr. Brantley, who was arrested along with his wife for domestic violence, spent the night in a cell within hearing and limited sight distance of Staniford's cell.

---

[6] Smith testified that during this event she said, "I told them she was sicker than I was," and "I said she was very sick and needed to go to the hospital." (Smith Dep. at 20, Defs.' Ex. I.)

(*See* B. Brantley Dep. at 8, Defs.' Ex. K.)  Mr. Brantley testified that starting a few hours

into his incarceration, at approximately twenty minute intervals, he heard a woman yell

out to officers that she was sick, and also that she was hungry.  (*See id.* at 8, 15, 17,

18.)  After hearing her complaints, Mr. Brantley looked toward his wife's cell and saw a

woman standing at the window of the cell who was not his wife and who had light skin,

curly brown hair, and was wearing a light color top.  (*Id.* 22-24.)  There appears to be no

dispute that the woman who Mr. Brantley saw was not Staniford.[7]

## II.  STANDARD

Rule 56 of the Federal Rules of Civil Procedure, which governs summary

judgment motions, provides in part that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  The moving party has the burden of demonstrating that there is

no genuine issue as to any material fact, and summary judgment is to be entered if the

evidence is such that a reasonable jury could find only for the moving party.  *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Mt. Lebanon Per. Care*

*Home, Inc. v. Hoover Univ., Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).  It is not necessary

for the moving party to support its motion with affidavits or other similar forms of

evidence; rather, the movant need only show that "there is an absence of evidence to

---

[7]Defendants point out that Staniford "was dark skinned, wearing a black top with straight black hair," and therefore was not the woman Mr. Brantley saw.  (Defs.' Mot. at 8.)  While the picture provided by the defense of Staniford is of very poor quality, it shows that Staniford was wearing a black or dark top.  (Defs.' Ex. L.)

support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

The moving party may meet his initial burden by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his case. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). If the moving party meets this initial burden, the non-moving party must then present admissible evidence establishing a genuine material issue of fact. *Id.* The non-moving party cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative [admissible] evidence in order to defeat a properly supported motion for summary judgment." *Id.* The party who bears the burden of proof at trial must present evidence establishing a jury question as to each element of his claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000).

Failure to present sufficient evidence on an essential element of a claim or defense renders all other facts immaterial for purposes of summary judgment. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991). Although the non-moving party is entitled to a review of the evidence in the light most favorable to him, he is required to do more than simply show that there is some "metaphysical doubt as to the material facts.*" Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994) (quoting *Matsushita Elec. Ind. Co.*, 475 U.S. at 586)).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 250. Therefore, the court must necessarily examine the evidence provided in a light that is most favorable to the non-moving party, *United States v. Diebold, Inc.*, 369 U.S. 654,

7

655 (1962), and decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," *Ander*son, 477 U.S. at 251-252.

### III. DISCUSSION[8]

To prevail on a claim brought under 42 U.S.C. § 1983, Plaintiff must prove that Defendants acted "under color of law" and that their conduct deprived Plaintiff of a right, privilege, or immunity secured by the Constitution or the laws of the United States.  42 U.S.C. § 1983; *Markva v. Haveman*, 317 F.3d 547, 552 (6th Cir. 2003); *Sigley v. City of Pharma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) ("To state a claim under 42 U.S.C. § 1983 a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.").

This court must decide, therefore, whether or not Plaintiff has presented evidence, viewed in a light most favorable to Plaintiff, sufficient to establish that Defendants' conduct violated the decedent's constitutional rights.  *See O'Brien*, 23 F.3d at 995.  Plaintiff alleges that Defendants violated her decedent's Fourteenth Amendment right to due process.  (*See* Pl.'s Compl. at 3.)  It is well established that a pretrial detainee's Fourteenth Amendment right to due process is analogous to the

---

[8]Defendants bring their motion for summary judgment as to the individual defendants, because they claim they are all entitled to qualified immunity and that there was no deliberate indifference to a clear and serious medical need justifying recovery, and as to the City of Pontiac, because they claim there is no evidence of a custom and practice of being deliberately indifferent to clear medical needs.  In her response, Plaintiff concedes that Defendants Siner, Makowski, Lance, Miller and the City of Pontiac should be dismissed. (*See* Pl.'s Resp. at 2.)  The parties entered a stipulation dismissing these Defendants on June 23, 2006.

8

Eighth Amendment's proscription of cruel and unusual punishment.[9]  *See Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992).  The Eighth Amendment provides that "cruel and unusual punishments [shall not] be inflicted."  U.S. Const. amend. VIII.  Accordingly, the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotations and citations omitted).

Nonetheless, "[t]he Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but only that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind."  *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (quoting *Hudson v. McMillian*, 503 U.S. 1, 20 (1992)).  "[A] prison official cannot be found liable under the Eighth Amendment for denying a prisoner humane conditions of confinement unless the official knows of and disregards an *excessive* risk to inmate health or safety."  *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis in original); *cf. Estelle*, 429 U.S. at 105 (finding that genuine accidents which produce additional suffering do not violate the Eighth Amendment to the Constitution)).

Though actual state action is required for most constitutional claims, the Supreme Court has held that "a prisoner's Eighth Amendment claim may be based on a "prison official's act or *omission*."  *Spencer v. Bouchard*, 449 F.3d 721, 731 (6th Cir. 2006) (citing *Farmer*, 511 U.S. at 834) (emphasis in original).  Accordingly, the Sixth

---

[9] For the sake of convenience, the court will simply discuss Plaintiff's claim as if it were in fact an Eighth Amendment claim.

Circuit has held that "in the prison context, an omission often *is* state action." *Id.* at 730 (emphasis in original). Plaintiff's claim here is that of an omission, *i.e.*, that Defendants acted with deliberate indifference to the decedent's serious medical needs by failing to obtain for her the proper medical care. (*See* Pl.'s Compl. at 4.)

Such a claim, based on deliberate indifference to a prisoner's serious medical needs under the Eighth Amendment, must demonstrate the existence of two components: one objective and one subjective. *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) (citing *Farmer*, 511 U.S. at 834); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). "To satisfy the objective component, the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Comstock*, 273 F.3d at 702 (*citing Farmer*, 511 U.S. at 834). As the Sixth Circuit has stated,

> A claimant may satisfy the subjective prong of this inquiry by establishing that "the official knows of and disregards an excessive risk to inmate health or safety," which is to say "the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Clark-Murphy*, 439 F.3d at 286 (citing *Farmer*, 511 U.S. at 837). Under this standard, actual knowledge is required; it is not enough to show that a defendant "should have known" of this risk of harm. *House v. County of Macomb*, 303 F. Supp. 2d 850, 854 (E.D. Mich. 2004) (quoting *Davis v. Fentress County,* 6 Fed. Appx. 243, 249 (6th Cir. 2001)).

As another court in this district has recognized, "heroin withdrawal is a serious medical condition." *Kelly v. Wayne County*, 325 F. Supp. 2d 788, 791 (E.D. Mich. 2004) (citing *Morrison v. Washington County,* 770 F.2d 678, 681 (11th Cir. 1983) ([holding] chronic alcoholic suffering from acute alcohol withdrawal syndrome was "seriously ill.");

10

*Gonzales v. Cecil County,* 211 F. Supp 611, 616 (D. Md. 2002) ([holding] heroin

withdrawal [is] a "serious medical condition")).  While Plaintiff submits that Staniford was

suffering from heroin withdrawal, the medical examiner attributed her death to

"complications of drug abuse," most likely cocaine-induced heart arrhythmia.  (*See*

Defs.' Mot. Br. at 2; Pl.'s Resp. at 5; Medical Examiner's Report at 1, Defs.' Ex. E; Ortiz-

Reyes Dep. at 18, Pl.'s Ex. F.)  Regardless of whether Plaintiff died from heroin

withdrawal or cocaine-induced arrhythmia, there is sufficient evidence for a reasonable

jury to find that Plaintiff's medical condition was "sufficiently serious" to satisfy the

objective component.  *Farmer*, 511 U.S. at 834.

Plaintiff, however, has failed to produce any evidence sufficient to satisfy the

subjective component of her claim.  Construing the facts most favorably to Plaintiff, no

reasonable trier of fact could conclude that Staniford, or either of her two cell mates,

were ignored by any of the remaining Defendants when they allegedly attempted to tell

Defendants that Staniford was dangerously ill due to drug withdrawal.  The most that

can be said is that it is possible that a police officer on duty in the holding cell area that

day *could have* recognized Staniford's condition and obtained medical care for her.

There is no evidence, however, that any of the remaining Defendants actually knew of

her condition and consciously disregarded it.  The Supreme Court has expressly held

that negligence is not enough to violate Eighth Amendment.  *See id.* at 835.  Instead, a

defendant must be deliberately indifferent to a known, serious medical condition; at

best, Plaintiff's evidence succeeds only in showing that these officers were at one time

or another in close proximity to the decedent.  In order to survive summary judgment,

Plaintiff must produce evidence that Defendants "perceived sufficient facts to infer that

11

[the decedent] faced serious risks to [her] health and safety." *See Clark-Murphy*, 439 F.3d at 289.  Here, there is an absence of any evidence that the Defendant officers heard any call for help either Staniford or her cell-mates are alleged to have made.

While Wendy Smith testified generally that Defendants must have known of Staniford's condition or heard Staniford's cries, neither she nor any other witness can identify any of the officers except that one was a black male,[10] which does not fit the description of any of the remaining Defendants.  Without any evidence that any individual Defendant actually knew about Staniford's condition and decided to ignore it, the subjective component of Plaintiff's claim fails as a matter of law.  In *Clark-Murphy*, the Sixth Circuit faced the same constitutional question when a prisoner died of dehydration while in observation.  *Clark-Murphy*, 439 F.3d at 280.  The court demonstrated with great clarity that in order to avoid summary judgment, a plaintiff must be able to show at least an issue of material fact as to each defendant specifically.  *Id.* at 287-89.  In doing so, the Sixth Circuit made fine distinctions between individual defendants, noting that the Constitution does not allow a court to simply "invoke the doctrine of *res ipsa loquitor* and let the trial begin."  *See Clark-Murphy*, 439 F.3d at 286, 288-90; *see also Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (holding that "an inadvertent failure to provide necessary medical care cannot be said" to violate the

_____

[10]Smith testified that a "younger black male" told her it is not police policy to take prisoners suffering from drug complications to the hospital.  (*See* Smith. Dep. at 15-17, Defs.' Ex. I.)  Likewise,  Ms. Brantley testified that around the time of Smith's removal, she heard Staniford tell some officers that "she didn't feel well," and that one black male officer acknowledged Staniford with his eyes.  (*See* L. Brantley Dep. at 47-48, Defs.' Ex. F.)  Even if this were true, it would not save Plaintiff's claim, because the only black male defendant, Officer Andre Siner, was dismissed by agreement of the Plaintiff.  (*See* Defs.' Reply at 2.)

Eighth Amendment) (quoting *Estelle*, 429 U.S. at 105-106).  Rather, there must be specific evidence "regarding [Defendants'] purposeful indifference to [the decedent's] health and safety needs."  *Clark-Murphy*, 439 F.3d at 291.

Plaintiff in the present case simply has not presented any evidence that the remaining Defendants knew about her condition and ignored Staniford.  *See Clark-Murphy*, 439 F.3d at 291 (dismissing claims against certain defendants as a matter of law where there was no evidence that particular defendants knew of the decedent's health needs and where the defendants had only "brief exposure" to the decedent during the course of one shift).  Accordingly, Defendants are entitled to summary judgment.[11]

---

[11]  The court notes that in light of this holding, Defendants' entitlement to qualified immunity is moot:

> The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999).  Because the court finds that Plaintiff provided insufficient evidence to withstand summary judgment on her constitutional violation claim, it is unnecessary for the court to determine whether her claim would also fail the test of qualified immunity.

13

## IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendants' motion for

summary judgment [Dkt. # 20] is GRANTED.


S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE


Dated:  July 18, 2006


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, July 17, 2006, by electronic and/or ordinary mail.


S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522